IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. MARYMOUNT, INC., d/b/a CORPORATE SEARCH, a California corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>BAYER HEALTHCARE, LLC; and DOES 1-10,<br><br>    Defendants. | No. C 09-03110 JSW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND** |

Now before this Court is the motion to remand filed by Plaintiff J. Marymount, Inc., dba Corporate Search ("Corporate Search"). Having carefully reviewed the parties' papers, and considered the relevant legal authority, the Court hereby GRANTS Corporate Search's motion for remand.

**BACKGROUND**

On July 1, 2009, Corporate Search filed suit against Defendant Bayer Healthcare ("Bayer"), in the Superior Court of the State of California for the County of Alameda. (Notice of Removal, Ex. A (Compl.).) In its complaint, Corporate Search alleges that Bayer failed to pay Corporate Search a referral fee that it was owed. (*Id.*, ¶¶ 22-24.)

Corporate Search alleges that since 2002, it had an ongoing business relationship with Bayer, referring potential candidates to Bayer for employment. (*Id.*, ¶ 6.) Corporate Search provided referral services to Bayer pursuant to a standard written fee agreement. (*Id.*, ¶ 7.)

On March 18, 2008, Corporate Search referred KY Chan ("Chan") to Bayer for the position of Senior Director of QA Development & Life Cycle Management at Bayer's office in

Berkeley, California. (*Id.*, ¶ 11.) Bayer determined that Chan was not a suitable candidate for the position and did not make Chan an offer of employment, Bayer did not pay Corporate Search a referral fee for this unsuccessful referral. (*Id.*) Two months later, Bayer engaged another search firm for a position of Associate Director QA at Bayer's office in Emeryville, CA. This search firm referred Chan for that position. Bayer ultimately hired Chan for the position in Emeryville and paid the other search firm a referral fee for this hire. Corporate Search alleges that because they initially referred Chan, that Corporate Search had the right to represent Chan and that Corporate Search should have been paid the referral fee for his hire. (*Id.*, ¶¶ 13, 14.)

Based on these allegations, Corporate Search asserts the following four causes of action against Bayer: (1) breach of contract; (2) fraud; (3) breach of the covenant of good faith and fair dealing; and (4) unfair competition under California Business and Professions Code section 17200. (*Id.*, ¶¶ 19-36.)

In its prayer for relief, Corporate Search seeks, *inter alia*, compensatory damages, punitive damages, attorneys' fees and costs. (*Id.*, at 6.) Although Corporate Search's complaint does not specify the precise amount of compensatory damages that it is seeking, Corporate Search alleges that Bayer owes it $52,500 for failing to pay the referral fee. (*Id.*, at ¶¶ 22-24.) In a pre-complaint demand letter to Bayer, Corporate Search offered to settle the dispute for $63,000. (*Id.*, at 15.) The $63,000 proposed settlement covered "all claims, attorneys' fees, costs, punitive damages, and interest due." (*Id.*) Corporate Search has not affirmatively declared that it seeks damages of less than $75,000.

On July 9, 2009, Bayer removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal, ¶ 5.) Bayer asserts, relying on the allegations in the Complaint, that the amount in controversy exceeds $75,000, and that there is complete diversity of citizenship between the parties. (*Id.*, at ¶ 6-9.) Corporate Search now moves to remand this action to state court.

## ANALYSIS

**A.    Legal Standards Relevant to Removal Jurisdiction**

2

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citation omitted).

In order to remove on the basis of diversity jurisdiction, the action may be removed only if no defendant is a citizen of the same state as any plaintiff and "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1332(a)(1). In addition, the removing party "must show that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" *Valdez*, 372 F.3d at 1116 (quoting 28 U.S.C. § 1332(a)).

**B.     Corporate Search's Motion to Remand**

Corporate Search argues that Bayer has failed to meet its burden of establishing diversity jurisdiction. (Mot. at 1.) Specifically, Corporate Search argues that Bayer failed to establish that the amount in controversy exceeds $75,000, and failed to establish complete diversity of citizenship between the parties. (*Id*. at 3, 5.)

**1.     Bayer fails to establish that the amount in controversy exceeds $75,000**.

The amount in controversy for diversity cases must exceed $75,000, and "[i]t must appear to a legal certainty that the claim is really for less than [$75,000] to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); 28 U.S.C. § 1332(a). "The amount in controversy includes claims for general and special damages (excluding costs and interests), attorneys fees if recoverable by statute or contract, and punitive damages if

3

recoverable as a matter of law." *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) (citations omitted).

"[I]n cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam). In order to determine whether a removing defendant has met its burden, a "court may consider facts in the removal petition" as well as any "summary-judgement-type evidence relevant to the amount in controversy at the time of removal." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citations omitted). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003).

Here, Bayer submits evidence of Corporate Search's pre-complaint settlement offer, evidence of punitive damage verdicts in purportedly comparable cases, and evidence of attorneys' fee awards in purportedly comparable cases. (Bayer's Request for Judicial Notice ("RJN"), Exs. 1-5.)[1] As is discussed below, this evidence is not sufficient to prove by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. *See Cohn,* 281 F.3d at 840.

    **a.**    **Settlement offer**

Corporate Search's pre-complaint settlement offer does not establish that the amount in controversy exceeds $75,000. "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn*, 281 F.3d at 840 (citations omitted). The parties do not dispute that prior to filing its complaint, Corporate Search offered to settle "all claims, attorneys' fees, costs, punitive damages, and interest due" for $63,000. (Compl., at 15.) Bayer points out that Corporate Search's "offer[] to *compromise*" is "only $12,000 below the jurisdictional limit," and seems to argue by

---

[1] Defendants' request for judicial notice is granted. *See* Fed. R. Evid. 201.

4

implication that this Court can infer that the amount in controversy is met due to the proximity of the settlement offer to the jurisdictional limit. (Opp. at 4) (emphasis in original).

This District dealt with a similar situation in *Faulkner v. Astro-Med, Inc.,* 1999 U.S. Dist. LEXIS 15801 (N.D. Cal. Oct. 1, 1999). In *Faulkner*, the plaintiff made an initial offer to settle his claims including "all compensatory damages, attorney's fees and punitive damages" for "$72,000, with each side to bear their own fees and costs." *Id.* at *8. Subsequently, the Plaintiff made a second settlement offer for $50,000 that "also included compensatory damages, attorney's fees and punitive damages." *Id*. The Court found that the two settlement offers supported "plaintiff's claim that he [was] seeking a total of less than $ 75,000," and ultimately found that the defendant had not shown that the amount in controversy exceeded $75,000. *Id*. *8, 12.

Other districts have come to similar conclusions. In *Vasquez v. CSX Transportation Inc.*, the plaintiff made a settlement offer of $70,000. *See id*., 2009 U.S. Dist. LEXIS 57835, *1 (N.D. Ill. July 1, 2009). There, the court acknowledged that "when litigants settle lawsuits, they usually take the risk of going to trial into account. Thus, plaintiffs usually settle for less than what they believe they could get if they prevailed at trial." *Id*. at *7. However, the court noted that the $70,000 settlement offer was an initial offer, and typically initial offers are used "to anchor the negotiations in [a party's] favor by starting the process with a high number." *Id*. Accordingly, the court refused "to jump to the conclusion that because [the plaintiff's] initial settlement offer was $70,000, the amount in controversy" exceeded $75,000. *Id*. at *7-8.

The Court finds the reasoning of *Faulkner* and *Vasquez* convincing. Corporate Search made a pre-complaint settlement offer of $63,000. Although this amount is relatively close to the jurisdictional limit, it is substantially lower than the amounts that the courts in *Faulkner* and *Vasquez* found did not demonstrate the amount in controversy exceeded $75,000. Moreover, this offer was an initial offer which Corporate Search acknowledges was artificially inflated based on its incorrect calculation of the referral fee. (Reply, at 2.) Corporate Search subsequently reduced the amount it seeks to recover in its complaint after it learned the correct amount of the candidate's salary. (Reply, at 2.) Though perhaps a bit artificially inflated, the

5

1  $63,000 figure contained in Corporate Search's settlement offer still "appears to reflect a
2  reasonable estimate of [Corporate Search's] claim," and thus the Court gives great weight to it.
3  *Cohn*, 281 F.3d at 840 (citations omitted). The fact that the settlement offer covered "all
4  claims, attorneys' fees, costs, punitive damages, and interest due," is also compelling. (Compl.,
5  at 15.) Therefore, the Court finds that Corporate Search's settlement offer does not demonstrate
6  that the requisite amount in controversy has been met.

**b.     Evidence of punitive damage awards**

Second, Bayer fails to establish that any award of punitive damages, when taken in conjunction with any compensatory damages is likely to exceed $75,000. "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citations omitted). "Under California law, punitive damages are not available for breaches of contract no matter how gross or willful." *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985) (citation omitted). "Punitive damages are recoverable, however," if the defendant "breaches the implied covenant of good faith and fair dealing and is guilty of oppression, fraud or malice." *Id.*; *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1238-39 (1991). "However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (citing *Surber v. Reliance Nat'l Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000)). Rather, a defendant must present evidence to show that any "punitive damages, coupled with other relief that Plaintiff seeks, will more likely than not exceed the jurisdictional minimum." *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004). Such evidence includes "evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

Here, Bayer has provided the Court with three verdicts reached in cases it contends are comparable. (RJN, Exs. 1-3.) The sole California case Bayer submits, *Barry M. Gold & Co. v. Lockton Insurance Brokers Inc.*, does not assist Bayer in establishing the amount of a punitive damage award. (RJN, Ex. 2.) In *Barry M. Gold*, the jury "awarded Gold $250,000 in quantum

6

1  meruit . . . and the court awarded Gold prejudgment interest of approximately $29,000." 2002
2  Cal. App. Unpub. LEXIS 8625 at *13 (Cal. Ct. App. Sept. 13, 2002). The jury did not award
3  any punitive damages. *Id.* Accordingly, *Barry M. Gold*, is not relevant to the discussion of
4  potential punitive damage awards.

5  Bayer also relies in part on *Bill Pepper Inc. v. Temperature Systems Inc.* and
6  *Management Recruiters of Greenville v. R. J. R. Mechanical Inc.*. (RJN, Exs. 1, 3.) However,
7  both of these cases are distinguishable. In both *Bill Pepper* and *Management Services*, referral
8  agencies referred candidates to prospective employers. (RJN, Ex. 1, 3.) The candidates were
9  hired, but the hiring employers did not pay referral fees to the referral agencies. (*Id.*) In both
10 cases, juries found that the hiring employers had intentionally withheld the fees from the
11 referral agencies. (*Id.*)

12 Here, although Corporate Search alleges that Bayer failed to pay it a referral fee for a
13 candidate Bayer hired, Bayer did not flatly refuse to pay any referral fee. Rather, Bayer paid
14 the referral fee to another agency who referred Chan, the candidate, two months after Corporate
15 Search had referred Chan for another position in a different office. Corporate Search alleges
16 that Bayer paid the referral fee to the wrong agency. These facts are not as nefarious as the
17 facts in *Bell Pepper* and *Management Recruiters*. Therefore, the Court finds that these cases are
18 not factually analogous, and thus, do not demonstrate that punitive damages, coupled with other
19 relief that Corporate Search seeks, will more likely than not exceed the jurisdictional minimum.

20      **c. Evidence of attorneys' fee awards**

21 Third, Bayer's estimation of the attorney's fees in this case is not sufficient to find that
22 the amount in controversy exceeds $75,000. Claims for attorneys' fees may be included in
23 computing the amount in controversy when an underlying statute or contract authorizes such
24 fees. *Kroske*, 432 F.3d at 980 (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th
25 Cir. 1998)). Under California law, attorneys' fees may be awarded for claims brought under
26 California Business and Professions code section 17200. However, any award of attorneys'
27 fees under this section must comply with California Code of Civil Procedure section 1021.5.
28 *See generally Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941 (2004) (discussing the

7

interplay of Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Proc. Code § 1021.5). Section 1021.5 limits the award of attorneys' fees to any "action which has resulted in the enforcement of an important right affecting the public interest," and has conferred "a significant benefit" on the public. Cal. Civ. Proc. Code § 1021.5. As courts have noted, section 1021.5 places a high burden on those parties seeking to recover attorneys' fees under its provisions. *Id.* at 948 (discussing cases where California courts have refused to award attorneys fees under section 1021.5 because there was not "a significant benefit" to the public).

Bayer relies on out of state decisions to support its assertion that any attorneys' fees, when taken with other damages, will exceed $75,000. (RJN, Exs. 4-5.) Reliance on these cases is misplaced. In both cases, the courts awarded attorneys' fees under the law of Texas and not that of California. Bayer does not even attempt to address Corporate Search's ability to recovery attorneys' fees under the rigid standards of California Civil Code section 1021.5. Therefore, the Court finds that Bayer has failed to show by a preponderance of the evidence that any attorneys' fees award in conjunction with any other damages would exceed $75,000 in the present case.

Accordingly, Bayer fails to meet its burden to demonstrate that the amount in controversy exceeds $75,000.[2]

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Corporate Search's motion for remand. The case is remanded to the Superior Court of the State of California for the County of Alameda. The Clerk shall close the file.

**IT IS SO ORDERED.**

*Jeffrey S. White*

---

2 Because this Court finds that Bayer has failed to establish that the amount in controversy exceeds $75,000, it need not address the diversity of citizenship between the parties.

8

Dated: November 30, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE